IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-34 Erie |
| | ) | |
| MICHAEL DENIRO HACKETT | ) | |

**MEMORANDUM OF THE UNITED
STATES IN AID OF SENTENCING**

AND NOW comes the United States of America, by its attorneys, Stephen R. Kaufman, Acting United States Attorney for the Western District of Pennsylvania, and Paul S. Sellers, Assistant United States Attorney for said District, and offers the following Memorandum concerning the sentencing of the defendant, Michael Deniro Hackett, and states as follows:

## I.     FACTUAL AND PROCEDURAL HISTORY

In March of 2020 the Pennsylvania State Police, working in conjunction with Homeland Security Investigations, discovered that Michael Deniro Hackett was recruiting a series of individuals in the Warren County area to serve as straw purchasers to acquire firearms on his behalf from licensed firearm dealers.   On March 9, 2020, Hackett had Kathryn Nicole Shaw falsify a firearms purchase form to state that she was the intended recipient of a Hi-Point, Model JHP-45, .45 caliber semi-automatic handgun from Dunham's Sporting Goods, 4000 Market Street, North Warren, PA 16365, a federally licensed firearms dealer.   In reality, Hackett had directed Shaw to purchase this firearm on his behalf, had driven Shaw to Dunham's Sporting Goods, provided Shaw with his debit card to purchase the firearm, and then took possession of the firearm and paperwork after the purchase was completed.

On May 27, 2020, Hackett had Treasure Ann Gray falsify a firearms purchase form to state that she was the intended purchaser of a Ruger, Model LCP, .380 caliber, semi-automatic handgun from Tall Tales Sporting Goods, 8330 Market Street, Russell, PA 16345, a federally licensed firearms dealer. Again, Hackett traveled with Gray to direct the purchase of the firearm, provided his debit card for Gray to complete the purchase, and then took possession of the firearm for himself afterwards and instructed Gray to file a fictitious report with the Erie Police Department identifying the firearm as stolen.

Later, Hackett attempted to recruit an undercover Pennsylvania State Police Trooper complete a third straw purchase on his behalf. Hackett reached out on multiple occasions throughout June and July of 2020 in an attempt to complete this third straw firearm purchase, including providing specific information about what types and calibers of firearms he hoped to acquire. When Hackett finally set up a time for the third straw purchase on July 21, 2020, he provided the undercover Trooper with $500.00 cash to purchase a Charter Arms Mag Pug .357 caliber revolver handgun and to falsify the firearm purchase form and he offered additional payment in marijuana following the straw purchase. Throughout this entire time period, Hackett was prohibited from purchasing a firearm because he had previously been convicted of Possession of a Firearm with an Altered or Obliterated Manufacturer Number, in violation of 18 Pa.Cons.Stat.Ann. § 6110.2(A), on November 4, 2011, at Docket Number 353-CR-2011, in the Court of Common Pleas of Warren County, Criminal Division.

Hackett was initially charged on a Criminal Complaint at Erie Division Docket Number 20-64 with violations of 18 U.S.C. §§ 371 and 922(g)(1) on July 21, 2020. On August 11, 2020, a grand jury seated in the Western District of Pennsylvania return a five-count indictment against Hackett charging him with violations of 18 U.S.C. §§ 357, 922(a)(6), 2, and 922(g)(1). On August

19, 2020, Hackett was arraigned before Magistrate Judge Richard A. Lanzillo and entered a plea of not guilty.  On November 19, 2020, Hackett participated in a change of plea hearing in front of Senior District Judge David S. Cercone and entered a plea of guilty Counts 2 and four of the Indictment and acknowledged responsibility for the conduct charged in Counts 1, 3 and 5.  Mr. Davis is scheduled to be sentenced on April 27, 2021.

**II.      ARGUMENT**

Although the Sentencing Guidelines are advisory, and "there is no mandatory script for sentencing," a district court must follow a three-step sentencing process.  *See, e.g., United States v. Ramey*, 721 F. App'x 135, 137 (3d Cir. 2018) (quoting *United States v. Goff*, 501 F.3d 250, 256 (3d Cir. 2007)).  First, it must correctly calculate the applicable Guidelines range.  Second, it must rule on any motions for departures.  Finally, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the court must meaningfully consider all of the factors set forth in 18 U.S.C. § 3553(a) and determine the appropriate sentence to impose.  *See, e.g., Ramey*, 721 F. App'x at 137 (citations omitted).

**A.      Calculation of the Applicable Sentencing Guidelines Range**

The Presentence Investigation Report (PSIR), indicates that the advisory guideline range is 57 to 71 months.  (ECF Doc. 66).  This calculation is based upon a total offense level of 23 and a criminal history category of III.  However, as part of the plea in this case, the parties agreed to stipulate to the relevant enhancements to arrive at a total offense level of 21.  With a total offense level of 21 and a criminal history category of III, the advisory guideline range would be 46 to 57 months.

**B.      Motions for Departure or Variance.**

The United States does not seek an upward or downward departure or variance in this case. The defendant seeks a downward variance for quickly accepting responsibility for his actions through a guilty plea.  The defendant has already received all credit he is owed for accepting responsibility in this case pursuant to U.S.S.G. § 3E1.1, especially considering his limited alternatives.  The evidence against the defendant was overwhelming.  The government had secured surveillance from the two stores where the straw purchases occurred showing the defendant directing the sales, obtained electronic communications from the defendant to his co-conspirators directing the straw purchases, acquired bank records from the defendant's account showing his debit card had been used to purchase the firearms, and recorded communications to include the defendant soliciting an undercover Pennsylvania State Police Trooper to straw purchase a third firearm after offering to pay her in cash and marijuana.  From the beginning, this case had only one perceptible outcome.  No additional credit is owed nor should be given for the defendant's acceptance of that fact.

**C.      The § 3553(a) Factors Support a Guideline Sentence**

When sentencing a defendant, the court's reasoning must be guided by all of the sentencing considerations set forth in 18 U.S.C. § 3553(a).  *Wise*, 515 F.3d at 216-17; *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006).  In pertinent part, these factors include:

(1)      the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)      the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law,  and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; ...

(3)      the kinds of sentences available;

(4)      the kinds of sentence and the sentencing range established for - (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines- ...

(5)     any pertinent policy statement - (A) issued by the Sentencing Commission
...

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; …

18 U.S.C. § 3553(a); *Id.*

Notably, these factors do not involve merely a focus upon the defendant's background and the impact of the sentence on the defendant.  Rather, a correct application of these factors to any case involves a balancing of all of the factors, which include the guidelines, the defendant's criminal conduct and the need for the sentence to reflect the seriousness of the offense.

The factors include the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the rule of law, provide just punishment for the offense, and afford adequate deterrence in the future.  This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010).  The sentence should reflect the gravity of the defendant's conduct in such a way that from the public's standpoint, the sentence is of a type and length that adequately reflects, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.  *Irey*, 612 F.3d at 1206 (citing S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).  Analysis under all these factors argues in favor of a sentence at the high end of the advisory guideline range.

In the present case, the defendant comes before the court with a lengthy, varied and concerning prior criminal history.  The defendant's criminal history shows prior convictions for endangering children, domestic violence against his pregnant girlfriend, assault, and drug sales.  Most relevant, the defendant has two prior convictions for weapons violations.  The most recent of these, from August of 2011, involved a call to the Warren Police Department when the caller located a loaded firearm magazine in a child's play area.  Officers located the defendant who was

reaching under a couch for a handgun with a partially obliterated serial number.  On this docket the defendant was sentenced to serve 26 to 52 months incarceration.   Despite repeated convictions and substantial periods of incarceration, the defendant's criminal behavior continues unabated.  In the instant case he sought out vulnerable individuals, previously free of criminal adjudications, to purchase handguns on his behalf.  Two prior firearms convictions did not deter the defendant's recidivist criminality.  Only a substantial period of incarceration at the high end of the advisory guidelines will adequately address both the defendant's crime and ensure the safety of the community.

### D.    Conclusion

The United States respectfully requests, in light of the charges and conduct to which Mr. Hackett has plead guilty, as well as his extensive and persistent criminal behavior over the past two decades, and for the reasons discussed herein, that this Court impose a sentence at the high end or the advisory guideline range of 57 months.

Respectfully submitted,

STEPHEN R. KAUFMAN
Acting United States Attorney

*s/Paul S. Sellers*
PAUL S. SELLERS
Assistant U.S. Attorney
PA ID No. 319175